UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21277-CIV-KING/BANDSTRA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

$1,370,851.62 IN UNITED STATES
CURRENCY, SEIZED FROM TOTAL
BANK ACCOUNT NO.: 0716331106,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on (a) Claimant Coin S.A. LLC's Motion for Summary Judgment (D.E. 63) filed on June 29, 2010; and (b) Plaintiff's Cross Motion for Summary Judgment (D.E. 67) filed on July 12, 2010. On July 14, 2010, these motions were referred to the undersigned for all permissible judicial proceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. §636(b). Accordingly, the undersigned conducted a hearing on these motions on September 1, 2010. Following careful review of the pleadings, all affidavits, bank documents, and other exhibits attached thereto, the complete evidentiary record currently before the Court, and applicable law, and in consideration of oral argument of counsel, the undersigned recommends:

    a. that Claimant Coin S.A. LLC's Motion fo Summary Judgment be GRANTED; and

    b. that Plaintiff's Motion for Summary Judgment be DENIED.

## INTRODUCTION

This is a civil *in rem* forfeiture action in which the United States (hereinafter "the Government") seeks forfeiture of $1,370,851.62 previously seized from a Miami bank account opened and controlled by claimant, Coin S.A. LLC (hereinafter "COINSA LLC"), a Florida limited liability company formed in 2005. COINSA LLC, while incorporated in Florida, is owned and managed by members of the Lacayo family who own and operate Supermercado Mas X Menos, a large supermarket in Honduras which imports gourmet foods and other goods from the United States for sale in Honduras. COINSA LLC was incorporated in Florida in 2005 to open bank accounts and establish a line of credit to facilitate payments to suppliers in the United States providing food and other goods to the Lacayo supermarket in Honduras as well as other import companies and retail businesses located in Honduras which use COINSA LLC to purchase goods in the United States.

The Government, in its Second Amended Complaint, alleges that the $1,370,851.62 seized from Total Bank Account No. 0716331106 (hereinafter the "defendant property") was lawfully seized by Government officials pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984, because "the defendant property was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960(b)(1)(a) or is property traceable to such property." Sec.Am.Cpt. ¶ 4. Essentially, the Government alleges that COINSA LLC maintained the subject bank account at Total Bank for a period of time between March 2005 and December 2008 and operated as an unlicensed "money transmitter" in violation of both Florida and federal law. Sec.Am.Cpt. ¶ 15, 16, 48. The Government identifies

eleven (11) specific monetary transactions, occurring between July 15 and August 28, 2008, in which COINSA LLC made monetary payments on behalf of its Honduran clients to suppliers in the United States on behalf of its Honduran clients using the Total Bank account. Sec.Am.Cpt. ¶¶ 34-44. The Government further alleges that bank records from Total Bank show that COINSA LLC "transferred approximately $1,474, 744.29 of funds from the Total Bank Account to third-party suppliers located in the United States, on behalf of certain of its Honduran customers" between July and August, 2008. Sec.Am.Cpt. ¶ 33. The Government alleges that the eleven identified transactions "constituted money transmitting" by COINSA LLC so that COINSA LLC was a "money transmitting business" operating in Florida "without a license" thereby committing "a felony under Florida law." Sec.Am.Cpt. ¶ 45-48. Based on these allegations, and a seizure warrant previously obtained, the Government seized the defendant property from the Total Bank Account on December 18, 2008.

COINSA LLC, the sole claimant to the defendant property, moves for summary judgment and the return of the defendant property on three grounds. First, COINSA LLC argues that it was not a "money transmitting business" under federal law because it transferred only its own funds into and out of the Total Bank Account for later reimbursement by its Honduran clients pursuant to short term financing agreements with those clients so that it never transmitted money of other parties as required to be considered a "money transmitting business" under 18 U.S.C. § 1960(b)(2). Second, COINSA LLC contends that it was not required under Florida law to obtain a money transmitting license because it did not receive funds from its clients prior to the alleged wire transfers or receive any funds whatsoever in Florida so it was not a "money transmitter"

3

under provisions of the Florida law. Third, COINSA LLC argues that Florida's money transmitting statute cannot be incorporated into 18 U.S.C. § 1960 because Florida law only requires registration for the "receipt of funds for transmission" but not for the actual transmission of those funds.

The government cross-moves for summary judgment agreeing with claimant that the material facts of this case are not in dispute concerning COINSA LLC's business activities but contending that those facts clearly demonstrated that COINSA LLC was an unlicensed "money transmitter "operating in a "money transmitting business" under both Florida and federal law so that the seizure was proper under the applicable statutes.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317 323 (1986). "The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of [its] claim on which [it] bears the ultimate burden of proof." *United States v. $715,031.27 Seized from Wachovia Bank Numbers x-3397, x-3423, x-7490 and x-4390*, 587 F. Supp. 2d 1275, 1277 (N.D. Ga. 2008) (citing *Celotex Corp.* at 322-23). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or as otherwise provided in the rule, "set out specific facts showing a genuine

4

issue for trial."

The court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." Cast Steel Prods., Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1301 (11th Cir. 2003). Although, in assessing the evidence, "[t]he court must not resolve factual disputes by weighing conflicting evidence," Brown v. Hughes, 894 F.2d 1533, 1536 (11th Cir. 1990), a "mere . . . scintilla of evidence" supporting the opposing party's position will not preclude entry of summary judgment against that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002). To meet the materiality standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248; see also United States v. Gilbert, 920 F.2d 878, 883 (11th Cir. 1991).

## UNDISPUTED FACTS[1]

COINSA LLC is a Florida limited liability company incorporated in Florida in 2005. COINSA LLC was formed to provide short-term financing, commonly referred to in Honduras as "anticipos," to businesses in Honduras for purchases made in the United States. COINSA LLC's primary business operations consisted of advancing (or "loaning")

---

[1] This statement of undisputed facts is based on the affidavits, bank documents, deposition testimony, and other exhibits attached to the cross-motions for summary judgment. In addition, the undersigned has reviewed the parties' statements of undisputed facts, and responses thereto, and finds that the parties are essentially in agreement on the material facts relevant to these motions.

funds in dollars to import companies and retail businesses in Honduras to pay for purchase invoices provided by food and other suppliers in the United States. In every instance relevant to this case, COINSA LLC advanced (or "loaned") funds to its Honduran clients to pay purchase invoices for later repayment by those clients in Honduras. Thus, COINSA LLC did not first receive funds from its Honduran clients and then transfer those funds on their behalf to the suppliers. Rather, COINSA LLC advanced (or "loaned") monies to its clients for later repayment so that any payments of monies from COINSA LLC's Total Bank account in Miami were from funds belonging to COINSA LLC at the time of payment. COINSA LLC's clients then repaid COINSA LLC in Honduras, pursuant to short-term financing agreements between COINSA LLC and its clients.[2]

COINSA LLC contracted with COIN S.A. Casa de Cambio ("Casa de Cambio") a licensed exchange agent in Honduras, to facilitate repayment by some of COINSA LLC's clients pursuant to a service contract between COINSA LLC and COIN S.A. Specifically, some Honduran clients made payments to COIN S.A. in Honduran currency ("lemperas")

---

[2]The affidavits of COINSA LLC's officers, Thelma Marie Lacayo and Thelma Judith Cuellar Santos de Lacayo, explain that prior to organizing COINSA LLC in Florida, legal and accounting professionals in the United States were consulted regarding the proper formation of the company, the necessity to obtain a Federal tax identification number, and requirements for opening a business checking account in Florida. The COINSA LLC officers were never advised by any consultants that COINSA LLC's business operations would be considered a money transmission business requiring registration or a license in Florida. See Affidavits of Thelma Marie Lacayo and Thelma Judith Cuellar Santos de Lacayo, ¶ 6. While these sworn statements have no direct bearing on the legal issues discussed below, they do support COINSA LLC's position that no attempt was ever made to avoid Florida or federal legal requirements or to hide the reason for and/or nature of the money transactions employing the Total Bank account. In fact, the government does not contend that the defendant property was connected in any manner to drug trafficking, money laundering, or any other illegal activity.

which was then exchanged into United States dollars for subsequent transfer by COINSA LLC to the Total Bank account in Miami.[3] All repayments for the specific transactions involved in this case were received by COINSA LLC in Honduras for subsequent deposit in the Total Bank account in Miami.

COINSA LLC paid suppliers in the United States for food and other items supplied to its clients in Honduras using the Total Bank account. A government investigation revealed that COINSA LLC made numerous wire transfers from this account to the suppliers throughout the United States between 2005 and 2007. COINSA LLC concedes these wire transfers and submits uncontroverted evidence that such payments were made to United States suppliers for goods purchased for itself and its Honduran clients. Total Bank records reveal that COINSA LLC opened the Total Bank account disclosing that its principal line of business as "sales [of] food products to different suppliers around [the] United States." COINSA LLC also identified its primary customer base as "supermarkets" and "grocery companies" in the United States including "Cotsco, BJ [and] Sams."

Total Bank records reveal that between July and August 2008, COINSA LLC transferred approximately $1,474,744.29 to third-party suppliers located in the United States. Specifically, COINSA LLC made eleven (11) specific money transmissions, each identified in the Second Amended Complaint, at the request of its Honduran clients for payments to suppliers located in the United States. For all eleven of these transactions, COINSA LLC "advanced" or "loaned" its clients the amounts transferred to the suppliers for later repayment in Honduras by COINSA LLC's clients. In every instance, COINSA LLC

---

[3]If the clients repaid COINSA LLC in dollars, such funds were deposited into COINSA LLC's bank account in Honduras.

wire transferred its own funds from the Total Bank account to the suppliers without prior receipt of funds by COINSA LLC from its clients. After the funds were wire transferred to United States suppliers, each client repaid COINSA LLC the amount advanced plus a "commission" or "interest" pursuant to short term financing agreements between COINSA LLC and its clients.[4] The government has offered evidence of at least fifteen additional transactions similar to those alleged in the Second Amended Complaint but the government has no evidence to show when COINSA LLC received payments from its clients for these transactions.

## ANALYSIS

Claimant, COINSA LLC, and the Government have cross-moved for summary judgment each contending that the undisputed facts and applicable law supports summary judgment in their respective favors. COINSA LLC essentially contends that the Government wrongfully seized the defendant property on the faulty premise that it was an unlicensed money transmitter operating in Florida when, in fact, it never transmitted money of others and need not have obtained a license in Florida to conduct business using its own monies in the Total Bank account. The Government argues the opposite contending that COINSA LLC clearly transferred funds in Florida "on behalf of others," whether or not

---

[4]The Government argues that payment from one COINSA LLC client, Corporacion Mondofar, was made after COINSA LLC made payment to a United States supplier on July 10, 2008. The Government offers evidence that this client's payment to COINSA LLC preceded the transfer as evidenced by an earlier date of July 7, 2008 on a Mondofar check. The Government cannot establish that COINSA LLC received this check from Mondofar before it was deposited by COINSA LLC on July 14, 2008, four days after the subject transmission of funds to the United States supplier.

COINSA LLC was first paid or later repaid for such transfers, which made COINSA LLC a "money transmitter" under both federal and Florida law.

Both COINSA LLC and the Government agree that resolution of these cross-motions requires interpretation and application of 18 U.S.C. § 1960 and the underlying Florida statute, Fla.Stat. § §1560 101 *et seq.*, under the particular facts of this case. The federal criminal statute, 18 U.S.C. § 1960, provides in relevant part:

> (a) Whoever knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than five years, or both.
>
> (b) As used in this section -
>
>> (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and -
>>
>>> (A) operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable....
>>
>> * * *
>>
>> (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or locations abroad by wire, check, draft, facsimile or courier.

18 U.S.C. § 1960 (a) and (b). The related forfeiture provision here is 18 U.S.C. § 981 (a)(1)(A) which provides that property is subject to forfeiture if the property was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, or is property traceable to such property.

Section 1960 prohibits operation of a money transmitting business required to be

9

licensed under state law. In this case, the government relies on Fla. Stat. §§ 560.101 *et. seq.* (Florida's "Money Transmitter Code") which establishes registration and other requirements for "money transmitters" in the state of Florida. The Government notes that Florida law makes it unlawful for any person other than a registered money transmitter or authorized vendor to engage in the business of a "money transmitter" in Florida. Fla. Stat. §560.125 (1). The Florida statute defines "funds transmitter" to mean "a person who engages in the receipt of currency or payment instruments for the purpose of transmission by any means, including transmissions within this country or to or from locations outside this country by wire, facsimile, electronic transfer, courier, or otherwise." Fla. Stat. § 560.103 (a). A "money transmitter" is defined as a person located in or doing business in Florida "who acts a payment instrument seller, foreign currency exchanger, check cashier, funds transmitter, or deferred presentment provided." Fla. Stat. § 560.103 (11).

The government contends that COINSA LLC was a "funds transmitter" under this definition which was not licensed as such in Florida so that COINSA LLC violated Florida law, and, in turn, 18 U.S.C. §1960. COINSA LLC disagrees arguing that it never received money for transmission from any of its Honduran customers prior to transmission of its own funds from the Total Bank account, never received any monies in Florida from those clients, and was not operating as a "money transmitter" in violation of the Florida or federal statutes.

Resolving this conflict, the Court is well aware that this case arises in the context of a civil forfeiture proceeding in which no person or party has been charged, much less convicted, of a violation of either Florida or federal law. COINSA LLC is incorporated in Florida and subject to its laws as well as the criminal provisions of the cited statutes.

Nevertheless, the Government has chosen to proceed against the defendant property itself, rather than pursue criminal liability against this corporation or its principles. While criminal charges and a conviction is not a prerequisite for civil forfeiture, the Court must recognize that civil forfeiture in this context hinges on potential criminal liability under the Florida and federal statutes.

The Government correctly notes that it need only establish the forfeitability of the defendant property by a preponderance of the evidence under 18 U.S.C. § 983(c)(1). While the Government is correct, the Court is also mindful that civil forfeiture statutes are to be "narrowly construed because of their potentially draconian effect." *United States v. Real Property*, 261 F.3d 65, 74 (1st Cir. 2001). The Supreme Court has repeatedly urged "a cautious interpretation of the scope of forfeiture provisions." *In re assets of Martin*, 1 F.3d 1351, 1360, (3d Cir. 1993) (citing *Austin v. United States*, 509 U.S. 602 (1993); *Alexander v. United States*, 509 U.S. 544 (1993). Moreover, federal courts have often noted that civil forfeitures are clearly punitive in nature and therefore give rise to many of the same constitutional concerns that exist in criminal prosecutions. *See Austin v. United States*, 509 U.S. at 608-09; *United States v. $92,422.57*, 307 F.3d 137, 152-55 (3d Cir. 2003); *United States v. $639,558 in U.S. Currency*, 955 F.2d 712, 714-15 (D.C. Cir. 1992). Fair warning that one's conduct is criminal is only one such constitutional concern - - particularly where uncharged criminal conduct is used to support a civil forfeiture.

COINSA LLC correctly notes that the touchstone inquiry is "whether the statute [at issue], either standing alone or as construed, made it reasonably clear at the relevant time that [claimant's] conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997);

11

*United States v. Velastequi*, 199 F.3d 590, 593 (2nd Cir. 1999). For this reason, federal courts have recognized a rule of lenity in construing forfeiture statutes where ambiguities or uncertainties in the scope of a given statute is to be resolved in favor of a defendant or claimant. *See e.g., United States v. Makeithon*, 822 F.3d, 310, 315 (2nd Cir. 1987; *United States v. Kalish*, 2009 W.L. 130 215 (S.D.N.Y. Jan. 13, 2009) ("The rule of lenity requires the definition of 'proceeds' [in 18 U.S.C. § 981(a)(2)] be construed in favor of defendant").

A. <u>COINSA LLC was not a "money transmitting business" under § 1960</u>

The primary issue here is whether COINSA LLC was a "money transmitting business" under 18 U.S.C. § 1960 at the time of the monetary seizure in 2008. As already noted, COINSA LLC argues that it was not because it never transmitted money received or belonging to others but rather used its own funds in the Total Bank account for later repayment in Honduras by its Honduran clients. The government disagrees arguing that COINSA LLC clearly transmitted funds in Florida and did so "on behalf of" its clients so that it is immaterial whether COINSA LLC first received monies from its clients.

Resolution of this issue requires interpretation of § 1960 in the unique context of this case. Both parties agree on the undisputed facts concerning COINSA LLC's business activities as stated above, and further agree that no federal court has analyzed or applied § 1960 in this particular situation. Preliminarily, the undersigned notes that 18 U.S.C. § 1960 was enacted in order to combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises. See S. Rep. No. 101-460, at 14 (1990), reprinted in 1990 U.S.C.C.A.N. 6645, 6658-59. The statute is designed, *inter alia*, to prevent the movement of funds in connection with drug dealing and

terrorism. H.R. Rep. No. 107-250(J), at 54 (2001). Broadly stated, Section 1960 was enacted as an anti-money laundering measure making it a felony to own and manage a money transmitting business without obtaining a license required under state law. See *United States of America v. Mazza-Alaluf*, 607 F.Supp.2d 484, 488 (S.D.N.Y. 2009). As already noted, the government is not alleging any such illegal activity in connection with the defendant property in this case.

Section 1960(b)(2) defines "money transmitting" as "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." The Second Circuit has noted that under § 1960, "[a] money transmitting business **receives** money from a customer and **then**, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually in a foreign country." *United States v. Velastequi*, 199 F.3d 590, 592 (2nd Cir. 1999), *cert. denied*, 531 U.S. 823 (2000). (emphasis added). Here, COINSA LLC argues that it did not *first* receive money from its clients and *then* transmit client funds to suppliers in the United States so that it was not a money transmitting business under the *Velastequi* definition.

The Government also appeared to recognize the need to first receive funds before transmission to constitute a section 1960 violation by alleging in the Second Amended Complaint as follows:

> 32. COIN[SA] LLC engages in the following business activity: Honduran customers exchange Honduran lempiras into U.S. dollars with the Honduran-based "Casa de Cambio," COIN S.A. The Honduran customers **then** request that a payment be made in U.S. Dollars to their U.S. suppliers. COIN[SA] LLC then wire transfers an equivalent amount of funds from COIN[SA] LLC's Total Bank Account, located in Miami, to U.S. suppliers, on

> behalf of the Honduran customers. COIN[SA] LLC receives remuneration for making the payments to U.S. suppliers. At some point, an equivalent U.S. dollar value of the exchanged Honduran lempiras is transferred from COIN SA to COIN[SA] LLC, in Honduras. COIN[SA] LLC replenishes funds in the Total Bank Account by making internal fund transfers between its Honduras-based accounts and the Total Bank Account.

Sec.Amd.Cpt. ¶ 32. (Emphasis added). While subject to various interpretations, these allegations concerning COINSA LLC's business activities suggest that the money transmitting process begins with a monetary exchange by the Honduran clients with the Case de Cambio in Honduras for subsequent transmittal of those funds by COINSA LLC using the Total Bank account in Florida. Factually, this did not occur because the undisputed facts reveal that COINSA LLC first paid the U.S. suppliers with its own funds for later reimbursement by its clients in Honduras. Thus, both the COINSA LLC and the Government appear to agree that a "money transmitting business" under § 1960 begins with receipt of money from another and then a transmittal of that money to a third party.[5]

The Government relies on no federal or Florida case law which supports its position that section 1960 "implicitly" covers COINSA LLC's activities regardless of when it received monies from its clients. The government cites only *United States v. Mazza-Alaluf*, 607 F.Supp. 2d 494 (S.D. N.Y. 2009), as a "similar case" in which a New York district court found that a Chilean company that used bank accounts in the United States to facilitate transfers of funds to third parties on behalf of its customers in Chile was a "money transmitting business" operating in violation of 18 U.S.C. § 1960(b)(2). While factually

---

[5]Similarly, Fla.Stat. §560.103(10) defines a "funds transmitter as a person who engages in receipt of currency... for the purpose of transmission..." While the statute does not mandate a pre-receipt of funds by the transmitter, the undersigned finds that such an interpretation is reasonable from a plain reading of the Florida Statute itself. This issue is discussed more fully below.

"similar" in many respects, the New York case differs from the instant case in that the monies transmitted in *Mazza-Alaluf* appear to have been provided by the Chilean clients in advance of the transmission and not later as occurred in the instant case. Thus, the undersigned finds that *Mazza-Alaluf* differs in a significant respect and offers no real support for the Government's position here. Finding no other support for the Government's interpretation of section 1960, the undersigned concludes that the statute should be interpreted consistent with COINSA LLC's position so that it should not be considered a "money transmitting business" under § 1960 in the manner in which it conducted business in this case.

### D. COINSA LLC was Not Required to Obtain a Florida Money Transmitting License

COINSA LLC's second argument focuses on Florida's Money Transmitter Code, Fla. §§560.101 *et seq.*, and its requirement for registration and licencing for "money transmitters" operating in Florida. The undersigned first notes that the Florida statute defines a "money transmitter" as "any person located in or doing business [in Florida] who acts as a ... funds transmitter...". Fla.Stat. §560.103(11). The statute then defines a funds transmitter as "a person who engages in the receipt of currency... for the purpose of transmission by any means... including transmission... by wire...." Fla.Stat. §560.103(10). COINSA LLC argues that "a money transmitter" under Florida law is limited to a person or business who receives currency for the purpose of transmission which it never did under the facts of this case. Rather, COINSA LLC contends, that it merely "loaned" or "advanced" funds to its Honduran clients while using its own funds to pay the United States suppliers and was later repaid with interest by the Honduras clients. In addition, COINSA LLC argues that the Florida Statute is inapplicable here because it never received funds

from its clients in Florida. The Government disagrees arguing that it makes no difference whether COINSA LLC first received monies for transmission or was later repaid by its clients.

Once again, the parties cite no Florida or other cases in which any court has analyzed the Florida statute in this situation.[6] Rather, both parties merely recite the applicable provisions of the statute and argue their own interpretations of what is or is not required to be a money transmitter in Florida. While both parties take reasonable positions, the undersigned finds that the Florida statute, on its face, defines a "money transmitter" as both the receiver and the transmitter of money in Florida which clearly did not occur in this case. COINSA LLC never received funds from anyone in Florida for transmission within or outside of the state. Thus, the undersigned finds from a plain and common sense reading of the statute itself, that COINSA LLC was not a "money transmitter" required to be licensed in Florida. This conclusion is consistent with the undersigned's analysis of 18 U.S.C. § 1960 and, in the absence of contrary authority, appears to be the most reasonable conclusion in this case.

---

[6]COINSA LLC cites *United States v. Bah*, 574 F.3d 106 (2d Cir. 2009), in which the Second Circuit analyzed a New York money transmission statute in the context of §1960(b)(1)(A) and "agreed with a requested jury instruction that "1960 does not make it unlawful to receive money for transmission without a license." While agreeing with this statement of law, the undersigned does not find the *Bah* decision to be helpful in deciding the issues of this case and the interplay between §1960 and Florida's money transmission statute.

## SUMMARY

The undersigned finds from the undisputed facts and applicable Florida and federal statutes that COINSA LLC was not operating as a "money transmitter" required to be licensed under federal or Florida law. Thus, the government was not entitled to seize the defendant property under 18 U.S.C. § 981(a)(1)(A). Clearly, the unique facts in the instant case give rise to conflicting interpretations of 18 U.S.C. § 1960 and Fla.Stat. §§1560.101 *et seq.*, well advanced by both COINSA LLC claimant and the Government in their legal memoranda. However, strictly construing the federal forfeiture statute here, as this Court must do under the above authority, the undersigned finds that COINSA LLC was not operating in violation of § 1960 because the funds it transmitted in the United States were not those of others despite later payment by its clients.

For all of the foregoing reasons, the undersigned recommends:

(a) that Claimant COIN S.A. LLC's Motion for Summary Judgment be GRANTED; and

(b) that plaintiff's Motion for Summary Judgment be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Judge James Lawrence King within ten (10) days of the receipt. *See* 28 U.S.C. §636(b)(1)(C). Failure to timely file an objection shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *Hallmark*

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Respectfully submitted this 6th day of October, 2010, in Miami, Florida.

Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:

Honorable James Lawrence King
All counsel of record